

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUIQIANG XU,<br><br>                          Petitioner,<br><br>v.<br><br>Pamela BONDI, in her official capacity as Attorney General of the United States, *et al.*,<br><br>                          Respondents. | Case No.:  26-cv-1765-GPC-DEB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Petitioner Huiqiang Xu ("Petitioner") is a noncitizen currently detained at the Otay Mesa Detention Center. ECF No. 1 ("Pet.") ¶ 5. On March 20, 2026, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging her continued detention without bond and naming the Attorney General of the United States and several other individual agency officials as respondents ("Respondents"). ECF No. 1. For the following reasons, the Court **GRANTS** the petition for a writ of habeas corpus. The Court **VACATES** the hearing set for April 3, 2026.

/ / /

/ / /

26-cv-01765-GPC-DEB

## I.   BACKGROUND

### A. Factual Background

Petitioner entered the United States on February 20, 2023. Pet. ¶ 28. On March 8, 2023, Petitioner was issued a Notice to Appear, charging him with removability under § 212(a)(6)(A)(i). *Id*. ¶ 29. Petitioner was then "released from immigration custody on parole issued under 8 U.S.C. § 1182(d)(5)." ECF No. 4 ("Ret.") at 2. [1]

On February 4, 2025, an immigration judge initially denied his and his family's applications for asylum and withholding of removal. Pet. ¶ 33. On November 4, 2025, the Board of Immigration Appeals vacated the prior decision and remanded for further proceedings. *Id*. ¶ 35. There is currently no final order of removal against Petitioner. *Id*. ¶ 26. Additionally, for approximately three years, Petitioner has been a law-abiding member of his community with no criminal history. *Id*. ¶ 31.

On February 28, 2026, Petitioner was detained by Respondents, while Petitioner was working as an Uber driver. *Id*. ¶ 37. He was transferred to the Otay Mesa Detention Center. *Id*.

### B. Procedural Background

On March 20, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his continued immigration detention. ECF No. 1. On March 25, 2026, Respondent filed a response to the habeas petition. ECF No. 4 ("Ret.").

Petitioner presents two main arguments. Pet. ¶¶ 54-67. First, Petitioner alleges that his detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. Pet. ¶¶ 59-67. Petitioner's second claim alleges that Respondent violated the INA by detaining him under the incorrect statutory authority. *Id*. ¶¶ 54-58.

---

[1] Page numbers reflect CM/ECF pagination.

2

26-cv-01765-GPC-DEB

Petitioner requests that the Court grant the Petition for Writ of Habeas Corpus, ordering his release. Pet. at 12. Petitioner alternatively requests that the Court order Respondent to provide her with an immediate bond hearing before an IJ. *Id*. Petitioner also requests the award of Petitioner's attorney's fees and costs under the Equal Access to Justice Act, as well as under any other basis justified under law. *Id*. at 13.

## II.   STATUTORY FRAMEWORK

### A. Standard & Expedited Removal Proceedings

An arriving noncitizen seeking admission into the United States at a U.S. Port of Entry is "processed either through expedited removal proceedings or through regular removal proceedings." *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019).  The regular removal procedure is also known as "section 240 proceedings." 240 proceedings involve an evidentiary hearing before an immigration judge and the ability for the individual to apply for asylum if she would be persecuted upon return to her home country. 8 U.S.C. § 1229a(a)(1), (b)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Noncitizens seeking asylum are guaranteed due process under the 5th Amendment throughout this process. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The DHS Secretary has discretion to release a noncitizen on parole during this process. In one procedure, an arriving asylum seeker may be paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). A separate procedure puts the immigrant in conditional parole. *Id*. § 1226(a). In either case, to release a noncitizen from custody requires a case-by-case determination, where the noncitizen must "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

The second, more streamlined process is expedited removal, governed by 8 U.S.C. § 1225. Under these proceedings, noncitizens can be ordered removed by an immigration

26-cv-01765-GPC-DEB

officer "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Because of the truncated procedure, expedited removal is limited to noncitizens meeting several requirements. First, a noncitizen is potentially eligible for expedited removal if he (1) sought to procure immigration status or citizenship via fraud or false representations or (2) "at the time of application for admission," failed to satisfy certain documentation requirements. *See* 8 U.S.C. § 1225(b)(1)(A)(i); 8 U.S.C. §§ 1182(a)(6)(C), 1182(a)(7). Second, expedited removal is further cabined to noncitizens who 1) are categorized as "arriving in the United States," or 2) have "not been admitted or paroled into the United States" and cannot affirmatively show they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id*. § 1225(b)(1)(A)(i)–(iii). Within that second requirement, the Attorney General can designate the population of noncitizens subject to expedited removal. *Id*. § 1225(b)(1)(A)(iii)(I).

Once detained under expedited removal, if the noncitizen indicates an intention to apply for asylum and the asylum officer finds the fear to return to be credible, the applicant's claim will be fully considered in a standard removal hearing. *Thuraissigiam*, 591 U.S. 103, 110 (2020).

### B. 2025 Designation for Expedited Removal

The Attorney General has delegated the office's expedited removal designation power to the DHS Secretary. Before January 2025, DHS had only designated noncitizens as eligible for expedited removal if they were identified as "arriving," had arrived by sea within the last two years, or had been apprehended within 14 days of entry and 100 miles of the border. *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68924, 68924 (Nov. 13, 2002); Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877, 48879 (Aug. 11, 2004). In January 2025, DHS published the 2025 Designation, authorizing

26-cv-01765-GPC-DEB

expedited removal to be exercised to the "full scope of its statutory authority." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8139 (Jan. 24, 2025). DHS has stated that this full scope applies to noncitizens "who are encountered anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but for less than two years." *Id*.

In its implementation of the 2025 Designation, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief" and executing "courthouse arrests." *Make the Rd. New York v. Noem*, No. 25-CV-190 (JMC), 2025 WL 2494908, at *5 (D.D.C. Aug. 29, 2025). The DHS' typical procedure for these courthouse arrests consist of "moving orally (without any advance notice) to dismiss the individual's pending section 240 proceedings, then arresting the individual at the courthouse immediately upon the dismissal of their section 240 proceedings, and then, finally, placing the individual in expedited removal proceedings through which they can be deported far more quickly, and with far less process, than they would have been in the section 240 proceedings." *Id*.

## III.    DISCUSSION

Petitioner claims his detention violates the Fifth Amendment Due Process Clause and the INA. Pet. ¶¶ 54-67. Respondent have not opposed the petition, acknowledging "this Court, and Courts in this District, have repeatedly reached the opposite conclusion [as Respondents] under the same and/or similar facts." Ret. at 2. At the same time, Respondent reserves the right to appeal. *Id*. Though Respondent has not opposed the petition, the Court will conduct a full analysis of the issues given Respondent's reservation.

/ / /

/ / /

26-cv-01765-GPC-DEB

**A. Fifth Amendment Due Process**

**i.  Entitlement to Due Process Rights**

The Fifth Amendment guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside our borders, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Under this wide umbrella, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

Here, Petitioner has "passed through our gates" and "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Because Petitioner has developed an interest in remaining during his time here, "the procedures used to remove him must adequately protect" that interest. *Make the Rd. New York v. Noem*, No. 25-CV-190 (JMC), 2025 WL 2494908, at *10 (D.D.C. Aug. 29, 2025).

This instant case stands in contrast to *Thuraissigiam*. There, the respondent was a noncitizen detained close to the border and shortly after unlawful entry, and keeping those characteristics in mind, the Supreme Court held that those "in *respondent*'s position ha[ve] only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (emphasis added). This holding only reinforced the precedent that noncitizens "on the threshold of initial entry stand[ ] on a different footing" than those who have "passed through our gates." *Mezei*, 345 U.S. 212.

26-cv-01765-GPC-DEB

In this case, Petitioner is not an "arriving" noncitizen but one that has been physically present in the United States for over three years. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal. *See Yamataya v. Fisher,* 189 U.S. 86, 87 (1903) (finding a noncitizen was entitled to due process before removal despite having spent only four days in the US).

### ii.  Government's Adherence to Due Process

Generally, due process protections depend on the situation and must account for (1) the private interest at issue, (2) the risk of erroneous deprivation of that interest through the procedures used, and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). Here, Petitioner alleges that he was detained while his asylum application was pending and while on parole without any opportunity to be heard prior to being arrested and detained. Pet. ¶¶ 54-67.

First, Petitioner has a private interest in remaining free, which developed over the more than three years he resided in the United States. Pet. ¶ 28. *See Morrissey v. Brewer,* 408 U.S. 471, 482-483 (1972); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). This liberty interest applies to Petitioner, even in his parole status. For example, *Morrissey*— though analyzing the criminal parole context—found that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others…[thus it] must be seen within the protection of the [Fifth] Amendment." 408 U.S. at 482.

In the deportation context, detention has minimum due process protections. Generally, detention is seen "as a constitutionally valid aspect of the deportation process," *Demore v. Kim*, 538 U.S. 510, 523 (2003), and the government holds the discretion to detain an immigrant pending removal, 8 U.S.C. § 1226(c). However, that discretion is not

26-cv-01765-GPC-DEB

unbounded. Detention pending removal proceedings has "two regulatory goals"—ensuring future appearances and preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This logically also extends to the granting of parole and its revocation. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."). These primary goals provide guidance for the floor of due process afforded to noncitizens for detention and parole.

Further, Petitioner has a Fifth Amendment right to due process of law in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Here, Petitioner was initially provided due process for his removal proceedings following his entry into the United States on February 20, 2023. Pet. ¶¶ 28-29. He was able to enter the country and was given parole, which reflected a determination he was not a flight risk or a danger to the community. Opp. at 2. He has timely applied for asylum and complies with all laws. Pet. ¶¶ 31-36. The proceedings have created a protectable expectation of his due process rights in his removal proceedings and the fair procedures this country guarantees. Thus, Petitioner was entitled to due process in his parole revocation. Particularly, he was entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination.

Second, the procedures used present a substantial risk of erroneous deprivation of those interests and are not outweighed by the Government's interest. In *Make the Rd. New York v. Noem*, which considers the application of the 2025 Designation, the court determined that "[b]efore removing someone through expedited removal, the Government must make several threshold determinations: whether the individual has been continually present in the United States for two years; whether they have previously been admitted or

8

paroled; whether they are inadmissible on one of the grounds that make them eligible for expedited removal; whether they have a credible fear of persecution; and whether they are a citizen, lawful permanent resident, refugee, or asylee." No. 25-CV-190-JMC, 2025 WL 2494908, at \*14 (D.D.C. Aug. 29, 2025). Each of these determinations present a substantial risk of error and harm to Petitioner's interests in remaining at liberty. This is especially true in regard to the credible fear interview—where individuals might not be appropriately referred for the interview or not afforded an effective opportunity to be heard—and the continual presence determination. *Id*. at \*15-17.

Respondents have also failed to demonstrate a significant interest in Petitioner's detention.  ICE did not provide Petitioner individualized notice or reasoning prior to his arrest and detention on February 28, 2026, and Respondent has presented no legitimate reason for why those decisions were made. Petitioner does not have a criminal record and is complying with all removal proceedings. Pet. ¶¶ 31, 36. There is no indication that he is a flight risk or presents a danger to the community, which strike at the core, guiding goals for parole, and Respondent has not supplied any additional information to the contrary. Denying Petitioner notice and reasoning on revocation of his parole took away a meaningful opportunity to contest and violated due process. *See Pinchi*, 792 F. Supp. 3d at 1032-35; *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146-47 (D. Or. 2025) (D. Or. July 9, 2025).

Finally, "[t]he Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267 (1994). The Supreme Court has limited retroactivity under the Due Process Clause under its "prohibition against arbitrary and irrational legislation." *United States v. Carlton,* 512 U.S. 26, 30 (1994) (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984)). Abiding to this principle, "administrative

26-cv-01765-GPC-DEB

rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

The 2025 Designation's language does not clearly require that it be applied to individuals who entered the United States prior to its effective date. Therefore, executing the Designation over Petitioner who entered the country before the Designation's effective date violated the Due Process Clause.

For those reasons, the Court finds that Petitioner's due process rights have been violated.

### B. Immigration and Nationality Act ("INA")

Petitioner argues that the INA was violated when Respondents detained him under § 1225(b)(2)(A). Pet. ¶¶ 54-58.

The application of expedited removal is limited to noncitizens who meet several requirements. One of those requirements cabins initiation of expedited removal to noncitizens who (1) are categorized as "arriving in the United States," or (2) have "not been admitted or paroled into the United States" and cannot affirmatively show they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)–(iii); *see also Coalition for Human Immigrant Rights v. Noem*, No. 25 Civ. 872 (JMC), 2025 WL 2192986, at *30 (D.D.C. Aug. 1, 2025).

Petitioner is no longer an "arriving" noncitizen after having resided here for over three years. In addition, beyond the fact that he has been present in this country for a 3-year period, he also has been paroled into the United States. Therefore, the Court finds that Petitioner could not be subject to § 1225.

In sum, Respondent's actions violated the INA.

/ / /

/ / /

10

26-cv-01765-GPC-DEB

## IV.    CONCLUSION

Based on the reasoning above, the Court **GRANTS** the petition for writ of habeas corpus. The parties are **ORDERED** to file a Joint Status Report within 72 hours of this Order's filing, confirming Petitioner's release. Further, in aid of the Court's jurisdiction, which is hereby retained, the Court **ORDERS** pursuant to the All Writs Act, 28 U.S.C. § 1651, that Respondent shall not cause Petitioner to be re-detained during the pendency of her removal proceedings without prior leave of this Court. The Clerk of Court **SHALL** enter judgment in Petitioner's favor and close this case.[2]

**IT IS SO ORDERED.**

Dated:  March 26, 2026

Hon. Gonzalo P. Curiel
United States District Judge

---

[2] In his prayer for relief, Petitioner requests an award of costs and reasonable attorney's fees. Pet. at 7. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order.

11

26-cv-01765-GPC-DEB